**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY KUO, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>NAVIENT CORPORATION; NAVIENT SOLUTIONS, LLC,<br><br>                              Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR FRAUD, DECEIT, AND/OR MISREPRESENTATION; NEGLIGENT MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; AND UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

1.     Plaintiff Lee Jay Kuo ("Kuo"), by and through his counsel, bring this class action against Defendants Navient Corporation and Navient Solutions, LLC (collectively, "Navient" or "Defendants") to seek declaratory and injunctive relief on time-barred claims; redress for their unlawful, unfair, and fraudulent representations; and disgorgement of Defendants' ill-gotten gains.

### INTRODUCTION

2.     For over a decade, Navient has lied to borrowers of so-called Bar Study Loans by telling them that the loans were not discharged in their bankruptcies and that they remained responsible to pay the balance. After courts around the country, including most recently the Fifth Circuit, have held that Bar Study Loans are subject to bankruptcy discharge orders, Navient has

CLASS ACTION COMPLAINT

switched tactics. After informing borrowers that the loans were not discharged in bankruptcy –

and collecting payments on those Loans from borrowers – for years, Defendants have now told

guarantors that the loans were discharged in bankruptcy and are attempting to collect the balance

from the guarantors. Kuo is a guarantor on a Bar Study Loan that Navient is now attempting to

collect payment from him by making misrepresentations.

3.    Plaintiff brings this action on behalf of himself, the general public, and those

similarly situated, seeking a judgment against Defendants that would, among other things:

(i) enjoin Defendants from soliciting payment from guarantors on the Bar Study Loans that they

are time barred from collecting upon; (ii) declare that any payments that Class Members made on

the time-barred debts did not extend the statute of limitations because any such payments were

induced by Defendant's fraud; (iii) require Defendants to return to the guarantors the payments

they made as a result of Defendants' fraudulent inducement of payments on the Bar Study Loans

that had long ago been discharged in bankruptcy and waive any penalties and fees allegedly

owed by Plaintiff and the guarantors for failure to make payments; and (iv) require Defendants to

pay Plaintiff's costs of suit, including reasonable attorneys' fees.

## **PARTIES**

4.    Plaintiff Lee Jay Kuo is an individual and a resident of New York City, New

York. Kuo was a resident of San Francisco, California in March 2009 when he negotiated and

executed the promissory note, and intended to perform, as a guarantor of Charles Martin's Bar

Study Loan.

5.    Defendant Navient Corporation is a Delaware corporation incorporated and

organized under the laws of the state of Delaware, with its headquarters and principal place of

business in Wilmington, Delaware.

6.     Defendant Navient Solutions LLC is a Delaware limited liability company incorporated and organized under the laws of the state of Delaware, with its headquarters and principal place of business in Wilmington, Delaware.

7.     With respect to the allegations herein, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

8.     With respect to the allegations herein: (a) the acts and omissions of each Defendant concurred and contributed to the various acts and omissions of the other Defendants in proximately causing the injuries and damages as herein alleged; (b) each Defendant aided and abetted the acts and omissions of the other Defendants in proximately causing the damages, and other injuries, as herein alleged; (c) each Defendant ratified each and every act or omission complained of herein; and (d) Defendants were each a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

9.     Each Defendant is jointly and/or vicariously liable for each other Defendant's wrongful conduct alleged herein.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) Plaintiff and Defendants are citizens of different states.

13.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

14.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of loan contracts, and activities engaged in by Defendants, within, affecting, and emanating from, the State of California. In particular, Plaintiff and the borrower of the subject Bar Study Loan were residents of California at the time that they negotiated, executed and intended to perform on the promissory note. Further, the borrower of the subject Bar Study Loan filed for bankruptcy in the state of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from services provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California. Defendants' wrongful acts and omissions occurred in California.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

16.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## DETAILED SUBSTANTIVE ALLEGATIONS

**Navient and the Bar Study Loans at Issue**

17.     Navient has been sued around the country for its predatory and illegal loan practices, including its practice of collecting on "Bar Study Loans" after a bankruptcy discharge. Navient or its predecessors made such loans to law school graduates who were preparing to take bar exams to supplement graduates' income during that time period. When the Great Recession hit the legal industry back in the late 2000s, many new lawyers who had taken out Bar Study Loans were laid off or could not find work and were forced to file for bankruptcy.

18.     At the completion of a bankruptcy proceeding, borrowers receive a discharge order that states that the discharge order eliminates the debtor's legal obligation to pay a debt that is discharged. It does not specifically state the debts that are discharged though and notes that most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. As an example of the types of dates that are not discharged, the discharge order states that "Debts for most student loans."

19.     The Bankruptcy Code excepts from discharge a "qualified education loan" as defined in § 221(d)(1) of the Internal Revenue Code. 11 U.S.C. § 523(a)(8)(B). A "qualified education loan" is any indebtedness incurred solely to pay for "qualified higher education expenses," which are those expenses incurred to cover the "cost of attendance" at a title IV eligible institution. 26 U.S.C. § 221(d)(1).

20.     The expenses to cover the "cost of attendance" include tuition, fees, room, board, books, and living expenses. § 472 of the Higher Education Act, 20 U.S.C. 108711.

21.     A title IV eligible institution is one recognized by the Department of Education, under title IV of the Higher Education Act. *Id.*

22.     Private loans made to students to cover expenses at non-title IV institutions or to cover expenses beyond the "cost of attendance" are not "qualified education loans" as defined in

CLASS ACTION COMPLAINT

the Bankruptcy Code. Such debts are merely consumer loans made to students and remain dischargeable under the Bankruptcy Code.

23.    Despite this, Defendants sent letters to the borrowers stating that their Bar Study Loans were ***not*** discharged in their bankruptcies. They told borrowers that "Bankruptcy doesn't always discharge student loans, and because your loan shown above wasn't discharged, you remain responsible for repaying the entire remaining balance." As a result, many borrowers continued to pay on their Bar Study Loans for years.

### *Crocker v. Navient*

24.    In 2016, Navient was sued in a Texas bankruptcy court by borrowers claiming that the Bar Study Loans they received were discharged in bankruptcy and Navient was not entitled to collected upon them after the discharge. *See Crocker et al. v. Navient Solutions LLC et al.*, Case No. 15–35886 (DRJ) (Bankr. S.D. Tex.). The borrowers sought to represent a nationwide class of similarly situated borrowers (including all borrowers from whom Navient attempted to collect upon their Bar Study Loans after bankruptcy discharges) and requested a preliminary injunction to halt Navient's efforts to collect upon those discharged loans.

25.    On April 11, 2017, the parties in *Crocker* submitted an Agreed Order of Voluntary Temporary Suspension of Collection Efforts in which Navient agreed that it would not collect on certain loans, including Bar Study Loans, from borrowers who received a discharge in any bankruptcy court in the United States. Navient thereafter sent a notice in 2017 to all such borrowers on its Bar Study Loans informing them that it was voluntarily forbearing on their loans and thereafter stopped requesting monthly payments.

26.    After the bankruptcy court in the *Crocker* case denied Navient's motion for summary judgment and held that it had jurisdiction to enforce discharge orders from bankruptcy courts nationwide and that the Bar Study Loans were dischargeable, Navient appealed. In 2019,

the Fifth Circuit ruled against Navient, finding that the Bar Study Loans were properly dischargeable in bankruptcy. *Crocker et al. v. Navient Solutions LLC et al.*, No. 18-20254 (5th Cir. 2019). However, the Fifth Circuit held that the Texas bankruptcy court lacked jurisdiction to enforce discharge orders from other bankruptcy courts. *Id.* Thereafter, the case was remanded back to the bankruptcy court.

27. In March 2022, the Texas bankruptcy court granted final approval of a settlement on behalf of borrowers who: (i) filed for bankruptcy in the Fifth Circuit who had private educational loans originated and/or serviced by Navient or its predecessors that were discharged in bankruptcy and (ii) were the subject of Navient's policy of attempting to induce payment of those discharged debts. Pursuant to the settlement agreement, Navient agreed to forgo collection on all outstanding balances on those borrowers' debts and return to the borrowers the payments they made on their loans after their discharges.

**Navient's Efforts to Collect on the Bar Study Loans from the Guarantors**

28. After the *Crocker* Fifth Circuit decision, Navient apparently realized that it was unlikely to prevail on its position that Bar Study Loans are non-dischargeable "educational loans," and thus it might not be able to collect on Bar Study Loans from borrowers who had declared bankruptcy in other parts of the country. Navient then turned to the guarantors of those loans to collect them. In early 2022, it sent out form notices to guarantors on loans with borrowers who filed for bankruptcy outside the Firth Circuit falsely claiming that it had been "recently notified" of the discharges of the Bar Study Loans and that the guarantors were now responsible since the borrowers were no longer were obligated to pay.

29. These letters contained at least two lies. First, Navient was not "recently notified" about any discharges in bankruptcy of any Bar Study Loans (except for those bankruptcies with recent discharge order). Navient hid the fact that, according to the Fifth Circuit, it was actually

CLASS ACTION COMPLAINT

on notice that the borrowers on the Bar Study Loans were no longer legally obligated to pay those loans as of the time of the bankruptcy discharges. For the loan guaranteed by Plaintiff that discharge had occurred a decade prior.

30.     Second, Navient's statement that the guarantors were now responsible to pay was also a lie since Navient's right to enforce the guarantees had long ago expired under applicable statutes of limitations.

31.     Navient sent out these false notices hoping that guarantors would begin making payments on the Bar Study Loans, thereby acknowledging the debt and possibly restarting any statute of limitations that would otherwise have barred Navient's claims on the loans. As payments obtained through misrepresentation, these payments cannot be used as grounds to claim that the loans were acknowledged and the statutes of limitations were recommenced through the act of payment on the loans.

32.     Had Navient stated the truth in its notices, guarantors would have realized Navient was seeking to collect on stale claims. The applicable statutes of limitations on Navient's claims against the guarantors began to run the moment the bankruptcies were discharged and Navient was no longer legally entitled to collect on the Bar Study Loans from the borrowers at the time of those discharges. Those claims are now time-barred.

33.     Navient continues to collect or attempt to collect money from Bar Study Loan guarantors even though its claims are time barred and even though it has not disgorged any of the money it improperly collected from the borrowers for years after their discharges.

**Plaintiff's Kuo's Experience With Navient**

25.     On or about March 17, 2009, borrower Charles Martin obtained a Bar Study Loan in the amount of $15,000 from Sallie Mae, Inc. Kuo signed as the guarantor for Martin's Bar Study Loan. The promissory note for the loan stated in the notices section that "This loan may

not be dischargeable in bankruptcy." Martin made regular payments on his loan until during the recession, Martin lost his job and filed for bankruptcy protection on December 10, 2010. *In re Martin*, Case No. 10-34860 (Bankr. N.D. Cal.) On March 8, 2011, the bankruptcy court discharged Martin's bankruptcy. (A copy of the discharge order is attached hereto as Exhibit A.) On March 11, 2011, notice of the discharge was sent to all creditors, including Sallie Mae, Inc. Defendant eventually acquired its servicing rights on Martin's Bar Study Loan from Sallie Mae.

26.     Despite admitting having received notice of discharges in bankruptcy of its Bar Study Loans, Navient nevertheless continued to collect on Martin from 2011 to 2017 as if it had not been discharged. Martin made monthly payments totaling around $20,000 for a Loan with an original balance of $15,000. In 2017, Navient informed Martin that it was voluntarily forbearing on the loan. As explained above, Navient's forbearance was precipitated by the agreed order in the *Crocker* case. Martin has made no subsequent payments.

27.     On or around May 5, 2022, Navient sent Plaintiff Kuo a form notice, attached hereto as Exhibit B, claiming that he was "now responsible for payment" of a loan made to Charles E. Martin. Navient falsely represented that it was "recently notified" that "Charles E. Martin has received a discharge through bankruptcy for loan program Bar Study," and it identified the Loan Number in question. In fact, Martin's bankruptcy was discharged in 2011 and Defendant's predecessor received notice of that discharge in 2011.

28.     In that same form notice, Navient informed Kuo: "While the borrower's bankruptcy was pending, the loans were placed in an administrative forbearance" but that the "forbearance has concluded and the loans have been placed back into repayment." This was false and misleading. Although Martin's Bar Study Loan was placed in administrative forbearance during his pending bankruptcy in 2010, the loan was placed back into repayment after his bankruptcy was discharged. Navient requested payment from Martin on his Loan until 2017,

when it again (unilaterally) placed the Bar Study Loan in forbearance because it had agreed to do so in the putative class action in Texas. Navient told Kuo, "As a result of the discharge of borrower's obligation, you are now solely responsible for repayment of the outstanding balance and the loan has been transferred into your name." However, Defendant collected payment from Martin since the debt was discharged in 2011.

29. Navient represented that "the primary borrower is no longer obligated to repay that debt" even though it has never contacted Martin to inform him of this, nor has it refunded any of the approximately $20,000 Martin paid from the time of his bankruptcy discharge in 2011 to its voluntary forbearance on the loan in 2017.

30. In fact, from 2011 until 2022, Navient had acted as though Martin's Bar Study Loan was not discharged in his bankruptcy. Indeed, Navient continued to collect monthly payments totaling approximately $20,000 from Martin until 2017, when it unilaterally placed his loan into voluntary forbearance. Navient illegally continues to this day to retain millions of dollars in payments made by the borrowers on such loans that, by its own admission, were discharged in bankruptcy.

31. Neither Navient (or its predecessor) sought to collect on the loan guarantee from Kuo until 2022. Navient only ever contacted Kuo directly about the loan ***11 years after the discharge***, with significant additional claimed principal and interest having since accrued on the loan. Navient's false representations in the May 5, 2022 notice were intended to deceive guarantors like Mr. Kuo into making payments on the Bar Study Loans and potentially waiving their statute of limitations defenses on otherwise time-barred claims.

32. On or around May 22, 2022, Navient sent Kuo a statement, attached hereto as Exhibit C, demanding payment of $512.57 on a balance of $38,581.27 comprising $22,661.85 in "unpaid principal" and $16,175.28 in "unpaid interest and unpaid fees" all based on original loan

of $15,000 made back in 2009 and on which Martin had made all regular monthly required payments.

33. Kuo responded to Navient in a letter dated May 31, 2022, in which he stated that he had received the May 5, 2022 notice in which Navient had claimed, "We were recently notified that Charles E. Martin received a discharge through bankruptcy for loan program Bar Study, identified by the loan number above." Kuo stated in response, "I am unaware of any such discharge through bankruptcy and do not believe any such discharge has occurred." He asked to be provided with "written evidence of this discharge immediately."

34. In response to Mr. Kuo's letter, Navient wrote Kuo a response on June 10, 2022. In that response, Navient claimed it had been "named as a defendant in a class action lawsuit," the name or details of which it did not list. Defendants further claimed that during the lawsuit, Navient was "under a court order not to collect on certain private individual student loans." It asserted, "Because of that order your cosigned loan was not collected upon while the lawsuit was pending" but that now that the lawsuit had been settled, "that court order is no longer in effect." Navient then represented, "As a result of these legal proceedings that impacted borrowers holding certain types of loans, this loan was transferred to your name. Customers may obtain a copy of the order by using the electronic document filing system of the U.S. Bankruptcy Court for the Southern District of Texas, available at https://ecu.txsb.uscourts.gov."

35. Navient's response did not provide the name of the case in question. It instead referred Mr. Kuo to the docket to hunt for the case to which it had vaguely alluded. This vagueness was intentional and designed to render any challenge to Navient's false representations more challenging. Mr. Kuo was nevertheless able to locate the *Crocker v. Navient* case. Martin's loan, however, did not appear in that case nor did Martin appear in the list of borrowers impacted by the settlement agreement in that case. Martin did not receive notice of

the settlement. Mr. Kuo then learned that Navient had argued that bankruptcy courts have no power to enforce injunctions preventing debt collectors from pursuing borrowers outside of their own jurisdictions, and the Fifth Circuit agreed. The settlement in that case did not purport to cover any loans outside of the court's jurisdiction. Navient did not respond to Kuo's question regarding how Navient allegedly had been "recently notified" that Martin's loan had been discharged.

36.     Mr. Kuo wrote again to Navient on June 20, 2022 noting that Navient's response had not provided any written evidence of the discharge in bankruptcy but instead referred him apparently to the *Crocker v. Navient* case with no further information. Mr. Kuo pointed out that the judge and the settlement in that case "expressly limit the class to those with bankruptcies filed within the Fifth Circuit" while in Mr. Kuo's case "the borrower's bankruptcy was filed in the Ninth Circuit and is therefore not affected by any order out of the Southern District of Texas." Plaintiff further reminded Navient that it had stated that "this loan was transferred to your name" without identifying by whom, even while deceptively implying in the very next sentence that it was upon order of the bankruptcy court in Texas, even though no such order or transfer exists there. Mr. Kuo stated that he could "only assume that your true intent was to obfuscate the fact that Navient made this transfer without a supporting order from that court or any court" and demanded that if Navient had any information to the contrary, to provide it immediately.

37.     Navient, through its counsel, Mark Raschess, responded on July 6, 2022 referencing the prior set of correspondence between the parties. Navient attached a copy of the "private student loan" made to Martin and a copy of the discharge in bankruptcy dated March 8, 2011. Despite Kuo's specific request that Navient provide evidence that it was "recently notified" about the discharge in bankruptcy, Navient provided no such evidence. It instead

provided only the 2011 notice of bankruptcy discharge and claimed that Kuo was responsible as a cosigner on the loan and that Navient had the right to seek payment from Kuo on the account.

38.     Mr. Kuo responded in a letter dated July 13, 2022, noting that Navient had not provided any evidence that it was "recently notified" as he had requested. Kuo asked Navient to confirm that the March 8, 2011 "Discharge of Debtor and Final Decree" from the Bankruptcy Court in California was the "only notice Navient ever received of the discharge of the above referenced loan" and if so, when Navient or its predecessor received it. Kuo requested that if there were any other notices of this discharge in Navient's possession to provide them promptly.

39.     Meanwhile, Navient continued to attempt to bill Kuo for the Loan, sending a letter on July 24, 2022 alleging to Kuo that "you've missed a payment and your loans are past due." It also added a "late fee" of $25.63 on top of "accrued interest" of $271.18 for a loan balance that had now grown to $39,108.54. Navient now demanded $1,588.62 in payments. Navient indicated Kuo could "avoid late fee" by paying by August 1, 2022. A copy of that correspondence is attached hereto as Exhibit D.

40.     Navient responded to Kuo's demand for more information in a letter dated July 25, 2022. In that letter, Navient declined to provide any further information about when Navient first became aware of Martin's bankruptcy and claimed it had "no bearing on your responsibility for the debt."

**Because Defendants Intend to Continue Their Deceptive and Unfair Conduct, a Public Injunction Is Needed to Protect the Public from Future Harm**

41.     To protect the general public from the threat of future injury, Plaintiff seeks a public injunction to prohibit Defendants from continuing the fraudulent, deceptive, unfair, and unlawful practices alleged herein.

42.     To stop Defendants' fraudulent, deceptive, unfair, and unlawful conduct, Defendants should, at a minimum, be required to plainly and truthfully disclose to all Bar Study

Loan guarantors the truth of when Navient was on first on notice that the Bar Study Loans were discharged. Further, Defendant should be enjoined from attempting to collect from guarantors on Bar Study Loans that were discharged in bankruptcy outside the statute of limitations. Finally, Defendants should return any payments made by the Class members as a result of Defendants' fraudulent inducement of payments.

## CLASS ALLEGATIONS

43.     Plaintiff brings this class action lawsuit on behalf of the following proposed class ("Class") of similarly situated persons, pursuant to Rule 23 of the Federal Rules of Civil Procedure, defined as follows:

> The Class: all persons who: (i) guaranteed Bar Study Loans that originated in the United States and were originated and/or serviced by Defendants or their predecessors and were made to borrowers who filed for bankruptcy protection; and (ii) who have been the subject of Defendants' policy of attempting to induce guarantors to make payment on time-barred discharged debts.

> The California Subclass: all Class Members who guaranteed Bar Study Loans that originated in California.

Plaintiff reserves the right to propose additional or alternative classes or subclasses, or to expand or narrow the above class definition. This reservation includes, but is not limited to, classes or subclasses involving consumers in multiple states or involving particular issues.

44.     This action has been brought and may properly be maintained as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

45.     Numerosity:  Plaintiff does not know the exact size of the Class, but estimates that it is composed of more than 1000 persons. At a minimum, the persons in the Classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

46. **Common Questions Predominate:** This action involves common questions of law and fact to the potential Classes because each class member's claim derives from the same deceptive, unlawful and/or unfair statements, omissions, and practices. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Classes to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

a. whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by attempting to induce guarantors to make payments on Bar Study Loans that were discharged in bankruptcy and are now time-barred;

b. whether Defendants' conduct is unlawful, unfair, or fraudulent in violation of the Unfair Competition Law, California Business and Professions Code §17200, *et seq.*;

c. whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

d. the amount of profits and revenues earned by Defendants and/or the amount of monies or other obligations lost by class members as a result of the misconduct;

e. whether Class and California Subclass Members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

f. whether Class and California Subclass Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

49. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendants engaged in violation of law as described herein. Further, the damages of each member of the Classes were caused directly by Defendants' wrongful conduct

in violation of the law as alleged herein. Plaintiff and members of the Classes have suffered injury in fact as a result of Defendants' misleading, deceptive, unfair, and unlawful conduct. Plaintiff and members of the Classes would not have paid the assistance fees but for Defendants' misconduct.

50.     Adequacy of Representation:  Plaintiff will fairly and adequately protect the interests of all Class and California Subclass members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of the class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the Class and California Subclass. By prevailing on his own claims, Plaintiff will establish Defendants' liability to all class members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

51.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Classes may be relatively small, the expenses and burden of individual litigation would make it difficult

or impossible for individual members of the Classes to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

52.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFF'S FIRST CAUSE OF ACTION

**(Declaratory and Injunctive Relief
on behalf of Plaintiff and the Class)**

67.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as set forth herein.

68.     Plaintiff requests declaratory judgment pursuant to 28 U.S.C. § 2201 that (i) the loans that Plaintiff and Class Members guaranteed are not non-dischargeable student loans or qualified education loans, and were therefore discharged upon entry of the applicable discharge injunctions in the borrowers' bankruptcies; (ii) Defendants are time barred from bringing claims against the Plaintiff and Class Members for payment of the discharged Study Bar Loans; and (iii) that any payments made by Plaintiff and Class Members do not operate to reset the statute of limitations because any such payments were fraudulently induced by Defendants.

69.     Plaintiff requests injunctive relief prohibiting Defendants from continuing to seek collection on the time-barred discharged debts.

### PLAINTIFF'S SECOND CAUSE OF ACTION

**(Common Law Fraud, Deceit and/or Misrepresentation
on behalf of Plaintiff and the Class)**

70.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as set forth herein.

CLASS ACTION COMPLAINT

71.     Defendants made false and deceptive representations and statements (by omission and commission) that led reasonable consumers such as Plaintiff and those similarly situated to believe that the Bar Study Loans for which they were guarantors had been recently discharged and that they were obligated to pay the Bar Study Loans. Defendants did not disclose that the Bar Study Loans had been discharged in bankruptcies many years ago.

72.     Defendants expressly and willfully claimed and/or threatened to enforce an alleged debt owed by Plaintiff and proposed members of the Class when they sent letters demanding payment of a time-barred debt that was long ago discharged in bankruptcy. Defendants made misrepresentations in those letters about, without limitation, the recency of the discharges.

73.     Defendants had duties to disclose material facts regarding the actual discharge date of the Bar Study Loans.

74.     Defendants knew or should have known that Plaintiff and those similarly situated would not know when the debts were discharged and/or whether the guarantors were obligated to pay for the debts.

75.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiff, and material at the time they were made. Defendants knew or should have known that the Bar Study Loans were discharged in the borrowers' bankruptcies. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff and those similarly situated as to whether to pay the allegedly outstanding Bar Study Loan balances. In misleading Plaintiff and those similarly situated and not so informing Plaintiff and the Class, Defendants breached their duties to them. Defendants also gained financially from, and as a result of, the breach.

76.     Plaintiff and the class members relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation refusing to make payments on the Bar Study Loans and/or not spending time and money to defend themselves against Defendants' false and misleading claims.

77.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, make payments on the Bar Study Loans, accrue interest and/or fees for refusing to pay the Bar Study Loans and/or spend time and money defending themselves against Defendants' false and misleading claims.

78.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants. Plaintiff specifically lost money as a result of Defendants' misrepresentations by incurring additional penalties and interest and the costs of defense, including attorneys' fees and costs, in conjunction with responding to Defendants' demands for payment and hiring counsel to respond to (and advise on) Defendants' demands for payment.

79.     As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount that they paid on the Bar Study Loans, the amount that Defendants have charged them in interest and/or fees for failing to make payments on the Bar Study Loans, and/or the amount they spent in conjunction with responding to Defendants' demands for payment and hiring counsel to respond to (and advise on) Defendants' demands for payment.

CLASS ACTION COMPLAINT

80.     Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

## PLAINTIFF'S THIRD CAUSE OF ACTION

### (Negligent Misrepresentation
### on behalf of Plaintiff and the Class)

81.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as set forth herein.

82.     Defendants made representations and statements (by omission and commission) that led reasonable consumers such as Plaintiff and those similarly situated to believe that the Bar Study Loans for which they were guarantors had been recently discharged and that they were obligated to pay the Bar Study Loans. Defendants did not disclose that the Bar Study Loans had been discharged in bankruptcies many years ago.

83.     Defendant expressly and willfully claimed and/or threatened to enforce an alleged debt owed by Plaintiff and proposed members of the Class when it sent letters demanding payment of a time-barred debt that was long ago discharged in bankruptcy. Defendants made misrepresentations in those letters about the recency of the discharges.

84.     Defendants had duties to disclose material facts regarding the actual discharge date of the Bar Study Loans.

85.     Defendants knew or should have known that Plaintiff and those similarly situated would not know when the debts were discharged and/or whether the guarantors were obligated to pay for the debts. Defendants should have known their representations were false, and that they had no reasonable grounds for believing them to be true when it made them.

86.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiff, and material at the time they were

made. Defendants knew or should have known that the Bar Study Loans were discharged in the borrowers' bankruptcies. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff and those similarly situated as to whether to pay the allegedly outstanding Bar Study Loan balances. In misleading Plaintiff and those similarly situated and not so informing Plaintiff and the Class, Defendants breached their duties to them. Defendants also gained financially from, and as a result of, the breach.

87.     Plaintiff and the class members relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refusing to make payments on the Bar Study Loans and/or not spending time and money to defend themselves against Defendants' false and misleading claims.

88.     By and through such negligent misrepresentations, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendants negligently induced Plaintiff and those similarly situated to, without limitation, make payments on the Bar Study Loans, accrue interest and/or fees for refusing to pay the Bar Study Loans and/or spend time and money defending themselves against Defendants' false and misleading claims..

89.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants. Plaintiff specifically lost money as a result of Defendants' misrepresentations by incurring additional penalties and interest and the costs of defense, including attorneys' fees and costs, in conjunction with responding to Defendants' demands for payment and hiring counsel to respond to (and advise on) Defendants' demands for payment.

90.    As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount that they paid on the Bar Study Loans, the amount that Defendants have charged them in interest and/or fees for failing to make payments on the Bar Study Loans, and/or the amount they spent in conjunction with responding to Defendants' demands for payment and hiring counsel to respond to (and advise on) Defendants' demands for payment..

91.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

## PLAINTIFF'S FOURTH CAUSE OF ACTION

**(Violation of the Rosenthal Fair Debt Collections Practices Act, California Civil Code §
1788, *et seq.*)
On Behalf of Plaintiff and the California Subclass)**

92.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as set forth herein.

93.    The foregoing acts and omissions constitute unfair or deceptive and/or unconscionable trade practices made unlawful pursuant to the California Rosenthal Fair Debt Collection Act, Civil Code § 1788, *et seq.*

94.    Defendants violated Cal. Civil Code §1788.17, which requires "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j" of Title 15 United States Code.

95.    Defendants violated 15 USC § 1692e when they knowingly used false, deceptive, or misleading representations or means in connection with the collection of the Bar Study Loans from Plaintiff and those similarly situated.

96.     Defendants violated 15 USC § 1692e(2) when they misrepresented (a) the character, amount, or legal status of Plaintiff's alleged debt; and (b) the services rendered or compensation which may be lawfully received by Defendants. Defendants specifically misrepresented that the Bar Study Loans for which Plaintiff and California Subclass members were guarantors had been "recently" discharged and that they were obligated to pay the Bar Study Loans; and deceptively represented to Plaintiff, and those similarly situated, that they were responsible for paying for the time-barred discharged Bar Study Loans. Defendants also falsely and deceptively did not disclose that: (i) the Bar Study Loans had been discharged in bankruptcies many years ago; and (ii) that they were time barred from collecting on the loans and/or bringing an adverse action against Plaintiff and those similarly situated for failing to pay the Bar Study Loans. Defendants also misrepresented that the debt was legally owed or "due," when Defendants knew, at a minimum, that the debt could not legally be collected as it was time barred. Defendants did so to increase their unlawful collections as they knew that Plaintiff, and those similarly situated, would be less likely to pay the alleged debts if they knew they were time-barred. Defendants made similar false representations to thousands of others similarly situated.

97.     Defendants violated 15 USC § 1692e(5) generally and more specifically in the following manner: by knowingly threatening to take any action that cannot legally be taken or that is not intended to be taken. Defendants specifically violated 15 USC § 1692e(5) by knowingly threatening, through the use of deception, omission, suggestion, implication and/or misrepresentation, that, if Plaintiff failed or refused to pay the "amount due" on the Bar Study Loans, it would (or could) result in an adverse credit reporting or continued collection efforts. Defendants further violated 15 USC § 1692e(5) by threatening to take action, including continued collection efforts for amounts that they knew could not be legally collected on time-

CLASS ACTION COMPLAINT

barred debts, including the entire amount due. Defendants made similar false representations to thousands of others similarly situated California Subclass members.

98. Defendants violated 15 USC § 1692e(10) generally, and more specifically, in the following manner: by using false representations and/or deceptive means to collect or attempt to collect any debt, including falsely and deceptively representing to Plaintiff and the California Subclass members that the Bar Study Loans for which they were guarantors had been recently discharged and that they were obligated to pay the Bar Study Loans; and deceptively representing to Plaintiff, and those similarly situated, that they were responsible for paying for the time-barred discharged Bar Study Loans. Defendants also falsely and deceptively failed to disclose that: (i) the Bar Study Loans had been discharged in bankruptcies many years ago; and (ii) that they were time barred from bringing an adverse action against Plaintiff and those similarly situated for failing to pay the Bar Study Loans. Finally, Defendants falsely and deceptively suggested or implied that an adverse credit report or continued collection efforts would be made.

99. Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants. Plaintiff specifically lost money as a result of Defendants' misrepresentations by Plaintiff specifically lost money as a result of Defendants' misrepresentations and omissions by incurring additional penalties and interest and the costs of defense, including attorneys' fees and costs, in conjunction with responding to Defendants' demands for payment and hiring counsel to respond to (and advise on) Defendants' demands for payment.

100. Defendants' acts described above were done willfully and knowingly with the purpose of coercing Plaintiff, and those similarly situated, into repaying the alleged debt within the meaning of Cal. Civil Code § 1788.30(b).

101.     As a direct and proximate result of Defendants' violation of California Civil Code §§ 1788.17 and 1788.10(a), Plaintiff and those similarly situated have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court. Plaintiff and those similarly situated are entitled to, at a minimum, statutory damages of $1,000 per incident as set forth in Civil Code §§1788.17 and 1788.30.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.* ("UCL")**
**On Behalf of Plaintiff and the California Subclass)**

102.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as set forth herein.

103.     Within at least four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

104.     Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating 11 U.S.C § 524 and California Civil Code § 1788, et seq., as described herein.

105.     Defendants have engaged, and continue to engage, in unfair and fraudulent practices by, without limitation: making representations and statements (by omission and commission) that led reasonable consumers such as Plaintiff and those similarly situated to believe that the Bar Study Loans for which they were guarantors had been recently discharged and that they were obligated to pay the Bar Study Loans; and deceptively representing to Plaintiff, and those similarly situated, that they were responsible for paying for the time-barred

discharged Bar Study Loans. Defendants did not disclose that: (i) the Bar Study Loans had been discharged in bankruptcies many years ago; and (ii) that they were time barred from bringing an adverse action against Plaintiff and those similarly situated for failing to pay the Bar Study Loans.

106. Plaintiff and those similarly situated relied to his detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Defendants not violated California law as described herein, and/or if Plaintiff and those similarly situated had been adequately informed and not deceived by Defendants, Plaintiff and those similarly situated would not have made payments on the Bar Study Loans and/or been charged interest or fees for failure to make payments on the Bar Study Loans.

107. Plaintiff, and those similarly situated, suffered injury and lost money or property as a result of these unfair trade practices in that their rights were impinged and/or they paid money to Defendants for alleged debts that they would not have paid had the unfair trade practices not occurred. Plaintiff specifically lost money as a result of Defendants' unfair trade practices as follows: He incurred additional penalties and interest and the costs of defense, including attorneys' fees and costs, in conjunction with responding to Defendants' demands for payment and hiring counsel to respond to (and advise on) Defendants' demands for payment.

108. Defendants' acts and omissions are likely to deceive the general public.

109. Defendants engaged in these unfair, deceptive, and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

110. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

111.     As a direct and proximate result of such actions, Plaintiff and the other class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Among other things, Defendants have put at risk Plaintiff's and the class members' credit ratings, have applied accrued interest and late fees to unpaid amounts, and have illegally sought to collect payment on Bar Study Loans.

112.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

113.     Plaintiff seeks, on behalf of himself and those similarly situated, equitable relief, including restitution for the amounts paid by Class Members to Defendants as result of Defendants' conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct.

114.     Plaintiff also seeks equitable relief, including restitution, with respect to his UCL unlawfulness claims for violations of 11 U.S.C § 524 and his UCL "fraudulent" claims.  Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's

CLASS ACTION COMPLAINT

individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

115. Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

116. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive, unfair, and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiff, those similarly situated, and the general public, have no other adequate remedy at law to ensure future compliance with the laws alleged to have been violated herein.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

**(Unjust Enrichment)**
**On Behalf of Plaintiff and the Class**

117.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

118.     Defendants expressly and willfully claimed and/or threatened to enforce an alleged debt owed by Plaintiff and proposed members of the Class when they sent letters demanding payment of a time-barred debt that was long ago discharged in bankruptcy. Defendants made misrepresentations in those letters about the recency of the discharges.

119.     Plaintiff and members of the Class conferred a benefit on the Defendants by making payments on the Bar Study Loans and/or accruing interest and/or fees for failing to make payments on the Bar Study Loans.

120.     Defendants have been unjustly enriched by accepting payments on the Bar Study Loans from the Class Members and/or charging interest and/or fees for Plaintiff and the Class Members' failure to make payments on the Bar Study Loans, which retention is unjust and inequitable, because Defendants falsely represented that the Bar Study Loans for which Plaintiff and Class Members were guarantors had been recently discharged and that they were obligated to pay the Bar Study Loans. Defendants also failed to disclose that the Bar Study Loans had been discharged in bankruptcies many years ago. This harmed Plaintiff and Class members because they made payments on the Bar Study Loans, accrued interest and/or fees for failing to make payments on the Bar Study Loans and/or spent time and money defending themselves against Defendants' unlawful, unfair and fraudulent acts.

121.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution and non-restitutionary disgorgement of profits to Plaintiffs and the Class members for their unjust

enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

122.    Plaintiff, therefore, seeks an order requiring Defendants to make restitution and pay non-restitutionary disgorgement of profits to him and other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and those similarly situated, respectfully request that the Court enter judgement against Defendants as follows:

A.    Certification of the proposed Class/Subclass, including appointment of Plaintiff's counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.    An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.    An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.    An award of treble damages, except for those causes of action where treble damages are not legally available;

G.    An award of restitution in an amount to be determined at trial;

H.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 16, 2022

CLASS ACTION COMPLAINT

**GUTRIDE SAFIER LLP**

/s/Seth A. Safier/s/
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**Northern District of California (San Francisco)**

| | |
|---|---|
| **In re:** | **Case Number:** 10–34860 TEC 7 |
| Charles E. Martin | **Chapter:** 7 |
| 535 Page Street | |
| San Francisco, CA 94117 | |
| | |
| Debtor(s) | |
| | |
| **Debtor/Joint Debtor Social Security Number(s):** | |
| xxx–xx–5867 | |

**DISCHARGE OF DEBTOR AND FINAL DECREE**

It appearing that the debtor(s) is/are entitled to a discharge, **IT IS ORDERED**:
The debtor(s) is/are granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

It further appears that the trustee, Janina M. Hoskins in the above–entitled case has filed a report of no distribution and said Trustee has performed all other and further duties required in the administration of said estate; accordingly, it is hereby

ORDERED that the chapter 7 case of the above–named debtor is closed; that the Trustee is discharged and relieved of said trust.

Dated: <u>3/8/11</u>

By the Court:

Thomas E. Carlson
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

Doc # 12

# EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

## Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a discharged debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:]* A creditor who violates this order can be required to pay damages and attorney's fees to the debtor. [There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the discharged the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

## Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

## Debts that are Not Discharged.

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes (applies to cases filed on or after 10/17/2005);

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts.

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (applies to cases filed on or after 10/17/2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

# Exhibit B

P.O. Box 9640
Wilkes-Barre PA 18773-9640



LEE JAY Y KUO
2280 FREDERICK DOUGLASS BLVD APT 12B
NEW YORK NY 10027-1868

583
MSP 5

585.L157

07  220505  PAGE  00001  OF  00001          00001
NMNS 1009 5006 106

# LEE JAY Y KUO, you are now responsible for repayment.

We were recently notified that Charles E Martin has received a discharge
through bankruptcy for loan program Bar Study, identified by the loan number
above.

Please note, the primary borrower is no longer obligated to repay this debt.
While the borrower's bankruptcy was pending, the loans were placed in an
administrative forbearance. The forbearance has concluded and the loans have
been placed back into repayment.

As the cosigner of the loan agreement, you accepted equal responsibility for
repayment of the above-referenced loan. As a result of the discharge of the
borrower's obligation, you are now solely responsible for repayment of the
outstanding balance and the loan has been transferred into your name.

**What to expect next**
*We have sent you a new repayment schedule. Please note that this payment is
only for the loan referenced above and doesn't include any other loans that you
may have.*

**Loan number**
5029 3504 0006 1409

**Date**
May 5, 2022

**Visit us online**
Navient.com

**Contact us**
888-272-5543

Monday - Thursday,
8 a.m. - 9 p.m.
Friday, 8 a.m. - 8 p.m. Eastern

**Ways you can pay**
**Online:** The fastest way to make a payment is by visiting Navient.com. With
our mobile site, it's easy to pay on your smartphone, too.
**By phone:** Call us at 888-272-5543.
**By mail:** Send checks or money orders to Navient, P.O. Box 9000,
Wilkes-Barre, PA 18773-9000. Make sure to include your statement, or write
your 16-digit loan number on the check or money order.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. If
you have any questions about your request, visit us online or give us a call.

**Important disclosure(s)**

*Your loan servicer*
Your loans are serviced by Navient Solutions, LLC (NMLS# 212430).

Exhibit C

# NAVIΞNT

**Please see the back of this statement for important information about account terms relating to payments, credit reporting, and how to contact us.**

LEE JAY Y KUO

*Need to make a quick payment or just check your balance? Use our automated phone system - it's available 24x7.*

**Billing Summary**

| | |
|---|---|
| Account Number | : 9281400417 |
| Loan Group Number: | 5029-3504-0006-1409 |
| Billing Period | : 04/23/22 to 05/22/22 |

**Activity Summary**

| | |
|---|---|
| Previous Statement Balance | $38,581.27 |
| Accrued Interest + Fees Assessed (+) | $255.86 |
| Payments Since Last Bill (-) | $0.00 |
| Current Balance | $38,837.13 |

**Payment Information**

| | |
|---|---|
| Past Due Amount (Pay Now) | **$0.00** |
| Late Fee for Past Due Amount | $0.00 |
| Pay Past Due Amount by this Date to Avoid Late Fee | N/A |
| Current Amount Due | **$512.57** |
| Current Amount Due Date | 06/17/22 |
| Pay Current + Past Due Amount by this Date to Avoid Additional Late Fee | 07/02/22 |
| Unpaid Fees | **$0.00** |
| Total Payment Due (Past Due Amount + Current Amount Due + Unpaid Fees) | **$512.57** |

## Loan Information as of 05/22/22

| | Current Balance | | | | | Total Payment Due | | | |
|---|---|---|---|---|---|---|---|---|---|
| Loan ID | Approved Loan Amount | Unpaid Principal | Interest Rate (F/V) | Unpaid Interest and Unpaid Fees | Current Balance | Current Amount Due | Past Due Amount | Unpaid Fees | Total Payment Due |
| 1409 | $15,000.00 | $22,661.85 | 13.750V | $16,175.28 | $38,837.13 | $512.57 | $0.00 | $0.00 | $512.57 |
| Subtotals | $15,000.00 | $22,661.85 | | $16,175.28 | $38,837.13 | $512.57 | $0.00 | $0.00 | $512.57 |

## Transaction Activity Summary

| Trans Date | Post Date | Transactions Description | Amount |
|---|---|---|---|
| 05/22/22 | 05/22/22 | *ACCRUED INTEREST* | $255.86 |

# NAVIΞNT

| Loan Group Number | Due Date | Current Amount Due | Past Due Amount | Unpaid Fees | Total Payment Due | Amount Enclosed |
|---|---|---|---|---|---|---|
| 5029-3504-0006-1409 | 06/17/22 | $512.57 | $0.00 | $0.00 | $512.57 | $ |

Make checks payable to Navient

(U.S. Currency only - Do not send cash)

*File but Do Not Pay*

LEE JAY Y KUO
2280 FREDERICK DOUGLASS BLVD APT 1          MSP 4
NEW YORK NY 10027-1868                      963

NAVIENT
P. O. BOX 9000
WILKES-BARRE PA 18773-9000

1 5029350400061409 9 00005125700000000000000000000000000051257 4 5

# Exhibit D

# NAVIENT

**Please see the back of this statement for important information about account terms relating to payments, credit reporting, and how to contact us.**

LEE JAY Y KUO

**Check out our short "how to" videos** and tips to learn how to successfully manage your online account at Navient.com/managing-your-account.

1-2

### Billing Summary

| | |
|---|---|
| Account Number | : 9281400417 |
| Loan Group Number | : 5029-3504-0006-1409 |
| Billing Period | : 06/23/22 to 07/22/22 |

**Activity Summary**

| | |
|---|---|
| Previous Statement Balance | $39,108.54 |
| Accrued Interest + Fees Assessed (+) | $296.81 |
| Payments Since Last Bill (-) | $0.00 |
| Current Balance | $39,405.35 |

**Payment Information**

| | |
|---|---|
| Past Due Amount (Pay Now) | **$1,032.51** |
| Late Fee for Past Due Amount | $26.00 |
| Pay Past Due Amount by this Date to Avoid Late Fee | 08/01/22 |
| Current Amount Due | **$530.48** |
| Current Amount Due Date | 08/17/22 |
| Pay Current + Past Due Amount by this Date to Avoid Additional Late Fee | 09/01/22 |
| Unpaid Fees | **$25.63** |
| Total Payment Due (Past Due Amount + Current Amount Due + Unpaid Fees) | **$1,588.62** |

## Loan Information as of 07/22/22

| Loan ID | Current Balance | | | | | Total Payment Due | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Approved Loan Amount | Unpaid Principal | Interest Rate (F/V) | Unpaid Interest and Unpaid Fees | Current Balance | Current Amount Due | Past Due Amount | Unpaid Fees | Total Payment Due |
| 1409 | $15,000.00 | $22,661.85 | 14.625V | $16,743.50 | $39,405.35 | $530.48 | $1,032.51 | $25.63 | $1,588.62 |
| Subtotals | $15,000.00 | $22,661.85 | | $16,743.50 | $39,405.35 | $530.48 | $1,032.51 | $25.63 | $1,588.62 |

## Transaction Activity Summary

| Trans Date | Post Date | Transactions Description | Amount |
|---|---|---|---|
| 07/02/22 | 07/02/22 | LATE FEE | $25.63 |
| 07/22/22 | 07/22/22 | *ACCRUED INTEREST* | $271.18 |

```
1009  0001 CUH     001  07 22  220722 0     D PAGE 1 of 3     1 0 9406  0400  L170                    3659
```

---

# NAVIENT

| Loan Group Number | Due Date | Current Amount Due | Past Due Amount | Unpaid Fees | Total Payment Due | Amount Enclosed |
|---|---|---|---|---|---|---|
| 5029-3504-0006-1409 | 08/17/22 | $530.48 | $1,032.51 | $25.63 | $1,588.62 | $ |



Make checks payable to Navient

(U.S. Currency only - Do not send cash)

LEE JAY Y KUO
2280 FREDERICK DOUGLASS BLVD APT 1
NEW YORK NY 10027-1868

MSP 17
3659

NAVIENT
P. O. BOX 9000
WILKES-BARRE PA 18773-9000

1 502935040006140 9 000053048000103251000002563000015 8862 2 5